Filed 8/3/26  P. v. Basler CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW ALEXIS BASLER,<br><br>    Defendant and Appellant. | D085094<br><br><br><br>(Super. Ct. No. SWF027442) |

APPEAL from an order of the Superior Court of Riverside County, Frederick Paul Dickerson, III, Judge.  Affirmed.

Allen G. Weinberg, under the appointment by the Court of Appeal; and Matthew Alexis Basler, in pro. per., for Defendant and Appellant.

No appearance by Respondent.

In 2012, a jury convicted petitioner Matthew Alexis Basler of first degree murder and premeditated attempted murder.  In his direct appeal, this court reversed Basler's first degree murder conviction, and the People accepted a reduction of the conviction to second degree murder.  (See *People v. Basler* (Dec. 23, 2015, D068047 [nonpub. opn.] (*Basler I*).)

Basler subsequently filed a petition for resentencing under Penal Code[1] section 1172.6, seeking resentencing on his second degree murder conviction and attempted murder convictions. After an evidentiary hearing, the trial court made findings beyond a reasonable doubt to support both convictions.

Basler filed a timely notice of appeal. Appellate counsel submitted a brief pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), indicating he has not been able to identify any potentially meritorious issues for reversal on appeal.

We notified Basler of his right to file his own brief on appeal. He elected to do so, raising three principal arguments. First, Basler argues that there was a "a lack of substantial evidence in the prosecution's case" at the evidentiary hearing, claiming there was insufficient evidence that he used a knife during the altercation. Second, Basler contends that the prosecution abused its discretion "by presenting a case of direct perpetrator liability" at the section 1172.6 evidentiary hearing because the prosecution dismissed a personal use enhancement before trial. Finally, he argues "the prosecution abused his discretion at the ... evidentiary hearing by presenting evidence focusing on [Basler's] behavior after the charged offense."

We have reviewed the arguments raised by Basler, and relevant portions of the record, and we agree with counsel that there are no potentially meritorious arguments on appeal. We therefore affirm.

---

[1] Further undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Offenses, Trial, and Appeal*[2]

In December 2008, Ryan Armstrong died after being stabbed during a fight outside a bar with Basler and his codefendants, James Wing Fung and Marvin Justin Black.  Basler and his friends got into an argument with Armstrong and his friends.  After the initial confrontation was over, Basler said he wanted to fight.  A witness overheard him tell Fung and Black they should pretend to apologize to Armstrong and then "jump" him.  Basler later dragged Armstrong out the back door of the bar before bystanders separated them.  Basler, who was not allowed to reenter the bar, went to his truck. When Basler's friends joined him, he was upset and agitated, saying things like, "Fucking kid needs to stop running his mouth."

After starting to drive away, Basler turned his truck into an alley behind the bar and drove toward Armstrong and his friends.  Basler and Fung immediately jumped out of the truck and attacked Armstrong, who fell to the ground.

One of Armstrong's friends, J.R., saw someone he thought was Basler standing over Armstrong and punching him.  J.R. jumped on the person's back but was pulled off, felt a punch to his side, and fell to the ground.  He noticed blood beginning to fill inside his jacket.  Another of Armstrong's friends saw Basler standing over J.R. when he was on the ground.  When the friend shoved Basler away, Basler swung a knife at him.

---

[2]  Because the factual background is principally provided for context, we rely on the facts as recounted in our opinion on direct appeal.  (See *Basler I, supra*, D068047.)  We note that Basler does not raise any arguments regarding the evidence presented at trial or this court's assessment of it in our prior opinion.

When the fight was over, Armstrong was transported to a hospital, where he died. An autopsy revealed numerous knife wounds: two cuts to his right bicep and the back of his left arm, two wounds to his left chest and side, and one stab wound to his lower back. J.R. suffered stab wounds to his left abdomen, his left chest, and his left flank, but he survived his injuries.

Basler and his friends left the scene in his truck. Within a few days, he traded his truck for a different car. When police attempted to arrest him, Basler fled, leading police on a high-speed car chase.

The police recovered Fung's knife at the scene. Armstrong was a potential major contributor to DNA found on the blade, while J.R. was a potential minor contributor to DNA found on the blade.

A jury convicted Basler of the first degree murder of Armstrong (§ 187, subd. (a)) and the premeditated attempted murder of J.R. (§§ 187, subd. (a), 664). The court sentenced him to an aggregate indeterminate term of 64 years to life in prison, plus a determinate term of five years.

In his direct appeal, this court reversed Basler's first degree murder conviction under *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), finding the trial court erred by instructing the jury on the natural and probable consequences theory of aiding and abetting first degree murder. We rejected Basler's challenges to his attempted murder conviction.[3] On remand, the People accepted a reduction of Basler's murder conviction to second degree murder and his aggregate sentence was reduced to 44 years to life plus five years.

B. *Section 1172.6 Proceedings*

_____

[3] Basler has also filed a petition for writ of habeas corpus (*In re Basler* (No. D086676)), in which he challenges his attempted murder conviction. We previously ordered the petition considered with this appeal and deny the petition by separate order, issued concurrently with this opinion.

4

In 2019, Basler filed a petition for resentencing under section 1172.6 addressed to his second degree murder conviction. (See *People v. Basler* (2022) 80 Cal.App.5th 46, 53 (*Basler II*).) After issuing an order to show cause and receiving additional briefing, the trial court held an evidentiary hearing. (*Ibid.*) Basler was not present. (*Ibid.*) At the evidentiary hearing, the court denied the petition, finding that Basler could still be convicted of murder beyond a reasonable doubt. (*Ibid.*)

In the appeal from the denial of the section 1172.6 petition, this court determined Basler had a right to be present at his evidentiary hearing. (*Basler II*, *supra*, 80 Cal.App.5th at pp. 58–59.) We also accepted the Attorney General's concession that following the passage of Senate Bill No. 775 (2020-2021 Reg. Sess.), section 1172.6 now applied to Basler's attempted murder conviction as well. (*Id.* at p. 60.) For these reasons, this court remanded for further proceedings on Basler's section 1172.6 petition consistent with the opinion. (*Id.* at p. 62.)

On remand from *Basler II*, the People conceded that Basler stated a prima facie claim for relief on his attempted murder conviction, and the court held an evidentiary hearing on both counts. The prosecution relied on the record of conviction and did not provide any new evidence. Basler elected to testify. He claimed that his knife was in his pocket during the altercation with Armstrong and that he "didn't stab anyone that night."

The trial court denied the resentencing petition in its entirety. With respect to the murder charge, it found that "nothing Armstrong did should have precipitated the continued aggression of Basler," but Basler was nonetheless "steaming all night long and demonstrated he was harboring premeditated intent," which "culminated in [his] hunting Armstrong down and attacking him with his codefendants." It further noted that "Basler was

5

seen holding a knife, and along with Fung, was seen pummeling or swinging at Armstrong."

The court did not think Basler's testimony undercut the evidence presented at trial, finding he "lacked credibility," especially with respect to his claim that he did not use a knife during the fight. It noted Basler's statements "that, in prison, he would still be stabbing, or that he wished he had stuck Armstrong while in the bar" and observed that "Basler's new testimony did not explain the implication from" these statements. Accordingly, the court "ha[d] no reasonable doubt and would convict Basler of murder based on the still valid theory of premeditated murder, and at a minimum, would convict Basler based on directly and maliciously aiding and abetting Fung's effort to kill Armstrong during the attack."

With respect to the attempted murder charge, the court found that "Basler's actions that night showed that [he] was willing to kill anyone who got in the way of his goal of killing Armstrong." Although Basler claimed he had not stabbed anyone, the court found he "was observed standing over [J.R.]," "was wielding a knife during the attack," and that "[J.R.] was stabbed multiple times in locations inconsistent with Fung's description of stabbing [J.R.]." These facts, "combined with the relatively small amount of [J.R.]'s DNA on Fung's knife, show[] that Basler stabbed [J.R.] at least once, if not more." The court again noted "Basler's claim of not wielding a knife during the attack is not credible." Therefore, the court had "no reasonable doubt and would convict Basler of premeditated attempted murder, and at a minimum, would convict Basler based on being a direct aider and abettor acting with malicious intent in furtherance of Fung's effort to kill during the attack."

## DISCUSSION

As noted, appellate counsel has filed a brief pursuant to *Delgadillo*, and Basler has elected to file his own supplemental brief. We have "evaluate[d] the specific arguments presented in that brief," but we decline to conduct "an independent review of the entire record to identify unraised issues." (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.)

Basler first argues that there was "a lack of substantial evidence in the prosecution's case" at the evidentiary hearing. He specifically claims there was insufficient evidence to support the trial court's finding as to murder because his "culpability rests solely in participating in a fist fight." He argues the trial court "simply assum[ed]" that he stabbed Armstrong. In fact, the trial court's oral ruling discussed particular evidence, including that Basler was observed with a knife during the altercation, as well as the "location of knife wounds on the victims,[4] the number of knife wounds on the victims, and the absence of bruising that would have been expected if Basler was using his fists while being observed swinging on Armstrong."

Basler points to his own testimony, including that he "never stabbed anyone" and "never intended for anyone to die." In doing so, however, he ignores the trial court's express finding that his testimony was not credible. He also does not address any of the contrary evidence discussed in the trial court's ruling or in this court's opinion on direct appeal. This includes evidence that "Basler proposed to Fung and Black that they pretend to apologize to Armstrong and then 'jump' him"; after leaving the bar, he "was

---

4    Basler claims the court improperly relied on the location of stab wounds "without consulting an expert." It is generally appropriate for a factfinder to draw inferences from the location of knife wounds without expert input. (See, e.g., *People v. Prince* (2007) 40 Cal.4th 1179, 1222.)

7

angry and agitated and his comments showed his intent to find Armstrong and harm him"; when he found Armstrong, he exited his "truck immediately with [his knife] and attacked"; and that "Armstrong was stabbed multiple times and from multiple angles." (See *Basler, supra*, D068047.) Basler thus fails to establish that the evidence presented was insufficient to support the trial court's ruling. (See, e.g., *People v. Stanley* (1995) 10 Cal.4th 764, 793 [it is defendant's burden to "specify how the evidence fails to support the verdict"].)

Next, Basler argues that the prosecution should not have been permitted to present "a case of direct perpetrator liability" at the section 1172.6 evidentiary hearing because the prosecutor dismissed a personal-use enhancement before trial. He claims the decision to drop the enhancement suggested "that the prosecution could present no proof that [Basler] acted in a manner that would suggest that he personally used a weapon during the course of the charged incident." Basler did not raise this argument in the trial court. (See *People v. Emanuel* (2025) 17 Cal.5th 867, 885, fn. 6 (*Emanuel*) [declining to consider issue not raised or addressed by lower courts].) But even assuming it has been preserved, the argument lacks merit. A prosecutor's charging decisions often involve factors beyond the sufficiency of the evidence. (See, e.g., *People v. Birks* (1998) 19 Cal.4th 108, 134 ["prosecutorial discretion to choose, for each particular case, the actual charges from among those potentially available arises from ' "the complex considerations necessary for the effective and efficient administration of law enforcement" ' "]; *People v. Andrews* (1998) 65 Cal.App.4th 1098, 1102 [prosecutor "is vested with substantial discretion in selecting which cases to charge and at what level" and "can exercise broad discretion in charging decisions"].) Thus, the pretrial decision not to charge a particular sentence

enhancement does not amount to a concession that there is insufficient evidence to support it.

Finally, Basler claims that "the prosecution abused [its] discretion at the ... evidentiary hearing by presenting evidence focusing on [Basler's] behavior after the charged offense." He argues the prosecutor's questions about his attempts to evade arrest were improper. Basler did not object to this line of questioning in the trial court, so has not preserved this argument for appeal. (See *Emanuel*, *supra*, 17 Cal.5th at p. 885, fn. 6.) Even if the contention had not been forfeited, we would find no error as "[t]he flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed ... is a fact which, if proved, the jury may consider in deciding his guilt or innocence." (§ 1127c.)

Basler also argues the prosecutor improperly asked him when he had become remorseful for his involvement in these offenses. While it is unclear how the timing of Basler's remorse is relevant, the trial court did not consider this factor in its ruling. Accordingly, we see no reasonable probability of a more favorable outcome if the prosecutor had not questioned Basler about when his remorse arose. (See *People v. Lewis* (2021) 11 Cal.5th 952, 973.)

## DISPOSITION

The order denying Basler's petition for resentencing under section 1172.6 is affirmed.

DATO, Acting P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.

10